(873 P.2d 195)
No. 69,823

STATE OF KANSAS, *Appellee*, v. AARON E. FLANAGAN, *Appellant*.

Opin-
ion filed April 29, 1994.

*Hazel Haupt*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Brenda M. Bachofer*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before LEWIS, P.J., GREEN, J., and JAMES J. SMITH, District Judge, assigned.

LEWIS, J.: Defendant was charged with burglary and theft. He appeared before the trial court and requested an order appointing counsel to represent him on these charges. The trial judge told defendant that, under the applicable guidelines, he was not eligible for appointed counsel. Defendant continued to argue that he was unable to pay for retained counsel. As a result, he was adjudged to be guilty of contempt. He was later sentenced to time served on the contempt charge. Defendant then pled guilty

to a misdemeanor charge of attempted theft in a plea bargain that resolved the felony burglary and theft charges. Defendant appeals from the contempt conviction. The other criminal charges are not involved on this appeal.

## JURISDICTION

We first turn to the question of whether we have jurisdiction to entertain this appeal. The State submits that, since defendant was sentenced only to time served on the contempt conviction, the appeal is moot. The argument is that neither the liberty nor freedom of defendant is affected by this appeal since his sentence for contempt has expired. It is also argued that there is no possibility of collateral legal consequences because of the conviction. We do not agree.

Kansas appellate courts will "not give opinions in matters where judgment could have no practical effect on a then existing controversy." *State, ex rel., v. Engler*, 181 Kan. 1040, 1042, 317 P.2d 432 (1957). However, we will not dismiss an appeal as moot "if by leaving the judgment unreversed vital rights of the parties would thereby be affected." 181 Kan. 1040, Syl. ¶ 1. This issue has been discussed at length by this court in *State v. Aleman*, 16 Kan. App. 2d 784, 830 P.2d 64, *rev. denied* 251 Kan. 940 (1992), and in *State v. Zirkle*, 15 Kan. App. 2d 674, 814 P.2d 452 (1991).

The real question is whether the criminal contempt conviction of defendant may have adverse legal consequences in the years to come. If it will, it is not moot simply because defendant has served his time. In *Pollard v. United States*, 352 U.S. 354, 358, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957), the United States Supreme Court held that a criminal conviction does not become moot simply because the defendant is no longer serving the sentence. The court recognized that a criminal conviction may carry with it many collateral disadvantages in the future, thereby adversely affecting an individual's life.

Based on the authorities cited above, we hold that a criminal contempt conviction does not become moot because a defendant may have served his or her time on that conviction. We recognize that the judicial system is an integral part of American life, and a criminal contempt conviction cannot help but affect a defen-

dant's life if he or she appears before a judge who becomes aware of that conviction. That fact, and other possible collateral consequences of this conviction, are too obvious to declare this appeal moot simply because defendant cannot be subjected to additional jail time.

## IS THE CONTEMPT CONVICTION VALID?

We begin by acknowledging that we were not present to witness defendant's demeanor during his discourse with the trial court on the issue of appointed counsel. We have only the record of what was said between the trial judge and defendant. Our examination of that record does not show conduct so disrespectful as to justify a criminal contempt conviction. We see nothing to show that defendant was obstructing the administration of justice. Criminal contempt is disrespectful conduct toward a court or its processes or conduct which obstructs the administration of justice. *Hendrix v. Consolidated Van Lines, Inc.*, 176 Kan. 101, Syl. ¶ 2, 269 P.2d 435 (1954). Our reading of the record discloses no such conduct.

On June 5, 1992, the trial court informed defendant he did not qualify for appointed counsel, and the following colloquy took place between defendant and the trial judge:

"THE DEFENDANT: Why was I turned down seeing how I come out in the hole every month as far as financial?

"THE COURT: Well, I don't know about your coming out in the hole, Mr. Flanagan—

"THE DEFENDANT: —What I am saying is, they show I owe more than I make.

"THE COURT: Mr. Flanagan, I am trying to—will you listen? I'm trying to explain it to you. The State establishes certain financial guidelines and they say since you are employed and based on the number of dependents that you have if you make over a certain dollar amount per month, you don't qualify for an appointed lawyer. It's that simple. Now, your application has been reviewed and based upon your income, you don't qualify for an appointed lawyer. It means you've got to hire one on your own.

"THE DEFENDANT: Well, I can't afford one. They want $750 up front to take this case.

"THE COURT: Mr. Flanagan—

"MR. FLANAGAN: —I don't have that kind of funds.

"THE COURT: You are trying to make your problem mine; aren't you? It doesn't work that way.

"MR. FLANAGAN: Then what do I do?

"THE COURT: Mr. Flanagan, I don't understand why you will not listen. Now, I'm going to explain it to you in very, very simple terms. You are on bond; aren't you?

"THE DEFENDANT: Yes, sir.

"THE COURT: How did you make bond?

"THE DEFENDANT: I had to get a friend of mine's parents to put up the bond.

"THE COURT: Okay. You are on bond now. Now, I'm telling you, you don't qualify for an appointed lawyer. You are going to have to hire your own. Now, how you go about that, it doesn't matter to me. Whether you borrow money from parents, friends or whatever. But you are putting me in a position of doing one of two things. If you don't hire a lawyer having not to be found qualified for an appointed lawyer, if you don't hire one as I direct you to do, I'm going to revoke your bond and put you back in jail and then you will qualify for an appointed lawyer because you will be unemployed. Is that plain enough?

"THE DEFENDANT: Yeah.

"THE COURT: Now, hire an attorney. Appear next time with an attorney or I'll revoke your bond and put you back in jail. It's that simple. Do you understand?

"THE DEFENDANT: Um—

"THE COURT: Do you understand?

"THE DEFENDANT: Yes."

On June 10, 1992, another discussion took place in open court as follows:

"MR. FLANAGAN: And I wish to have a lawyer present with me at [my diversion conference]. I've tried to obtain an attorney, but I've been unable to. Um, I've tried every possible avenue possible to me or known to me and I cannot afford it.

"THE COURT: Well, Mr. Flanagan, you've been found to be not qualified for appointed counsel. What choice do you have?

"THE DEFENDANT: I don't know.

"THE COURT: I'll revoke your bond, put you back in jail, then you won't be employed and you'll be eligible.

"THE DEFENDANT: What do you mean by revoke the bond?

"THE COURT: I will revoke the bond that you are on right now, the bond you posted, and then put you back in jail, then you'll be unemployed.

"THE DEFENDANT: Are you saying that the bond company will lose it and I'll have to pay that again?

"THE COURT: No, I'm saying that I'll just revoke the bond that you are on right now and put you back in jail and put you back in custody. Then you won't be employed and you'll be eligible for an appointed lawyer. You don't want me to do that, now, do you?

"THE DEFENDANT: No, I don't want you to do that, but I need an attorney with me.

"THE COURT: You are telling me that you can't afford an attorney.

"THE DEFENDANT: I do not have the funds. I have three dollars in my checking account and I have three dollars on my person.

"THE COURT: Mr. Flanagan, this is not my problem; is it?

"THE DEFENDANT: I have no way to obtain $1000 to $1500 cash wanted as a retainer for any of the lawyers that I have contacted.

"THE COURT: I say to you, again, the problem is yours, not mine.

"THE DEFENDANT: I want a lawyer.

"THE COURT: And I told you that I cannot appoint a lawyer for you. You make too much money.

"THE DEFENDANT: I don't make that much money.

"THE COURT: Mr. Flanagan, I am not asking—I'm not going to argue with you about this. I am the judge, you are the defendant. Now, do what you are told. Hire an attorney and be here.

"MR. FLANAGAN: I do not have the money. I've tried to get a loan.

"THE COURT: Mr. Flanagan, I'm going to find you in contempt of court right now. Take a seat in that jury box now. You are in custody.

"THE DEFENDANT: Your Honor, may I say something at this time?

"THE COURT: No, you've said much too much now. When you are a little older, you may realize you'll learn a lot more by listening rather than talking."

K.S.A. 20-1201 divides contempt in two classes, "direct" and "indirect." K.S.A. 20-1202 provides that any contempts committed "during the sitting of the court or of a judge at chambers, in its or his presence, are direct contempts. All others are indirect contempts." It is apparent that we deal here with "direct" contempt.

K.S.A. 20-1203 provides:

"That a direct contempt may be punished summarily, without written accusation against the person arraigned, *but if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto,* and the sentence of the court thereon." (Emphasis added.)

K.S.A. 20-1203 was not complied with. The entire transcript of the conversation which led to the contempt citation is set forth above. The trial judge, at the time he declared defendant in contempt, did not specify the conduct constituting such contempt. There is no statement of "whatever defense or extenuation the accused offered thereto." The journal entry filed to codify the conviction is perfunctory and it does not specify the grounds or set forth any defense offered. In summary, the conviction of

defendant of direct criminal contempt was done without compliance with 20-1203.

Our Supreme Court has held that a conviction for contempt which does not comply with K.S.A. 20-1203 is not merely reversible, it is void. *In re Gambrell*, 160 Kan. 620, 164 P.2d 122 (1945); *Wallace v. Weber*, 134 Kan. 201, Syl. ¶ 1, 5 P.2d 855 (1931). In *Gambrell*, the court said:

"The order of the court on the contempt proceedings contains no statement of the conduct constituting the contempt, neither does it contain a statement of whatever defense or extenuation the accused offered thereto. *These matters are jurisdictional and the absence of them renders the order void.* (See *Wallace v. Weber*, 134 Kan. 201, 5 P.2d 855, and cases cited therein.)" (Emphasis added.) 160 Kan. at 623.

We hold that the judgment finding defendant in contempt of court was void, and we reverse that conviction. We note that this issue was not raised by either party. However, the failure to comply with 20-1203 has been declared to be jurisdictional, and this court has the authority and obligation to raise the question of jurisdiction on its own motion where that issue is evident. *City of Overland Park v. Barron*, 234 Kan. 522, Syl. ¶ 1, 672 P.2d 1100 (1983); *In re Marriage of Marks*, 13 Kan. App. 2d 1, 2, 758 P.2d 257 (1988).

Approximately one week after defendant was convicted of contempt, the trial court advised his appointed attorney that the contempt finding was based on defendant's insistence for appointed counsel, despite having been told by the court that he did not qualify. This statement does not satisfy the provisions of 20-1203 and does not alter our decision that the conviction is void. However, we are of the belief that the insistence of a pro se litigant that he cannot afford an attorney should not ordinarily be the basis for holding him in contempt of court. Neither do we believe that a criminal defendant can be required to hire an attorney he cannot afford or suffer a contempt conviction as was threatened by the trial court in this action. We realize that each case must turn on its own peculiar facts, but our examination of the record in this matter fails to show conduct by defendant to justify a conviction for contempt.

In view of our decision to vacate the contempt conviction, the other issues raised by the parties are moot, and we do not reach them.

Defendant's contempt conviction is reversed, and the matter is remanded with directions to vacate that conviction.

Reversed and remanded with directions.