(154 P.3d 1120)
No. 96,261

STATE OF KANSAS, *Appellant,* v. WENDY DuMARS, *Appellee.*

Opinion filed April 6, 2007.

*Amy Hanley* and *Bobby J. Hiebert, Jr.*, assistant county attorneys, *Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, for the appellant.

*Paige A. Nichols,* of Lawrence, for the appellee.

Before RULON, C.J., MALONE and HILL, JJ.

RULON, C.J.: The State appeals the district court's refusal to permit retrial on defendant Wendy DuMars' drug-related offenses after this court reversed the defendant's convictions on the basis of cumulative trial error and remanded the case for new trial in *State v. DuMars,* 33 Kan. App. 2d 735, 108 P.3d 448, *rev. denied* 280 Kan. 986 (2005) *(DuMars I)*. The State contends the district court disregarded this court's mandate and that double jeopardy did not bar retrial of the defendant. The defendant responds that prosecution for the drug offenses is moot and the district court properly dismissed the charges on either double jeopardy or due process grounds. We reverse and remand for further proceedings.

The defendant was convicted by a jury of attempted manufacture of methamphetamine, two counts of possession of drug man-

ufacturing paraphernalia, possession of methamphetamine, possession of marijuana, three counts of child endangerment, obstruction of official duty, and criminal use of a weapon. At trial, the defendant requested a mistrial on the basis of improperly admitted and prejudicial hearsay evidence. The district court denied the requested mistrial. The defendant renewed her argument in posttrial motions for judgment of acquittal and new trial, which were denied.

The defendant appealed her convictions for attempted manufacture of methamphetamine and possession of drug manufacturing paraphernalia and one of the convictions for child endangerment. This court concluded the defendant's trial had been prejudiced by cumulative errors involving the admission of hearsay evidence and multiple instances of prosecutorial misconduct. With respect to the prosecutorial misconduct, specifically, this court noted: (1) the prosecution elicited hearsay from witnesses on two occasions; (2) improperly created a negative inference from the defendant's invocation of her right to remain silent post-*Miranda* warnings; (3) undermined the weight the jury might have placed in the instruction requiring jury unanimity; and (4) misstated facts in closing arguments. *DuMars I,* 33 Kan. App. 2d at 745-50.

Due to the deliberate and repeated nature of the prosecutorial misconduct, this court concluded the errors collectively worked to deny the defendant a fair trial. We further concluded the State had failed to present sufficient evidence to support the one child endangerment conviction challenged on appeal and ordered the conviction to be vacated. 33 Kan. App. 2d at 756.

Accordingly, the *DuMars I* court remanded the case for a new trial only on the attempted manufacture of methamphetamine and possession of drug manufacturing paraphernalia charges. 33 Kan. App. 2d at 757.

After the district court received the mandate of this court, the defendant filed an objection to the State's attempt to retry the drug-related offenses. After a hearing, the district court found double jeopardy had barred further prosecution of the defendant's convictions and refused to allow retrial. The State filed a timely notice of appeal.

## APPELLATE MANDATE

The State primarily contends the district court had no authority to disregard this court's mandate and dismiss the methamphetamine-related drug charges against the defendant. When an appellate court has remanded a case for further proceedings consistent with its mandate, a district court is obliged to effectuate the mandate and may consider only those matters essential to the implementation of the ruling of the appellate court. A determination of the district court's compliance with an appellate court mandate constitutes a question of law over which this court possesses unlimited review. *Edwards v. State,* 31 Kan. App. 2d 778, 780, 73 P.3d 772 (2003).

The appellate mandate rules are a subset of judicial policy regarding law of the case and are designed to implement consistency and finality of judicial rulings. *State v. Collier,* 263 Kan. 629, 636, 952 P.2d 1326 (1998). Consequently, when a second appeal is brought in the same case, the first appeal is settled law regarding all questions actually decided, explicitly or implicitly, in the first appeal. 263 Kan. at 632 (citing *Waddell v. Woods,* 160 Kan. 481, Syl. ¶ 3, 163 P.2d 348 [1934]).

Citing *State v. Downey,* 29 Kan. App. 2d 467, 470-71, 27 P.3d 939, *rev. denied* 272 Kan. 1421 (2001), the State argues this court, by ordering a retrial on the drug-related convictions, implicitly rejected a double jeopardy bar to further prosecution. In Downey's direct criminal appeal, this court affirmed Downey's convictions but remanded the case for resentencing. On remand, however, the district court granted Downey's motion to set aside his convictions and ordered a new trial. The district court's ruling was based upon evidentiary stipulations that Downey had entered in his first trial. This court implicitly addressed the stipulations in Downey's direct appeal, concluding that Downey waived any defect in the admission of such stipulations by failing to object at trial. When the State appealed the order setting aside the convictions, this court ruled the district court had violated the mandate of the appellate court by considering Downey's arguments related to his convictions. 29 Kan. App. 2d at 470-72.

*Downey* is distinguishable from this case. In *Downey*, the district court was presented with a mandate permitting consideration only of sentencing issues, yet the district court exceeded the scope of the mandate to consider Downey's argument related to his convictions. Moreover, Downey's trial issues on remand undermined a specific issue considered and rejected by this court, *i.e.*, the propriety of the admission of evidence by stipulation. In contrast, here, this court specifically reversed two of the defendant's convictions and ordered a new trial on those convictions in *DuMars I*. However, this court did not specifically address the defendant's double jeopardy claim, and the claim is not inconsistent with this court's ruling in *DuMars I*.

"Where the mandate of an appellate court merely reverses a ruling of the district court and remands the case for further proceedings but does not direct the judgment of the district court, the district court has discretion to preside over the remaining trial proceedings, as if the district court had originally made the ruling mandated by the appellate court. [Citation omitted.] In other words, a district court may address those issues necessary to the resolution of the case that were left open by the appellate court's mandate. [Citations omitted.]" *Edwards*, 31 Kan. App. 2d at 781.

In *DuMars I*, this court reversed the drug-related convictions for trial error and remanded the case for further proceedings. The district court was in the same position following remand as if the district court had granted the defendant's motion for a new trial on a similar basis. Under the circumstances, the district court possessed the authority to consider the defendant's double jeopardy claim without violating the appellate court's mandate.

## MOOTNESS

The defendant initially contends the State's appeal is moot because prosecution of the attempted manufacture and possession of drug paraphernalia charges will not serve any legitimate interest of the State in obtaining convictions. The defendant argues she has completely served any sentence which might be imposed after conviction and a conviction for the additional drug-related crimes will not affect the defendant's criminal history score.

An appellate court does not decide moot questions or render advisory opinions. The rule is based upon a judicial policy of adjudicating only real controversies relative to the legal rights of persons and property involved in a particular case so that the judicial determination will possess operative and conclusive effect. *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1046, 53 P.3d 1234, *rev. denied* 275 Kan. 965 (2002) (citing *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 [1996]).

Mootness is not a question of jurisdiction, and the courts have routinely acknowledged two exceptions to the rule. First, where a judgment is not enforceable only because of lapse of time or other changed circumstances and where dismissal of an issue will adversely affect rights vital to one of the parties, a court may address the issue. *Skillett*, 30 Kan. App. 2d at 1046-47 (citing *Gonzales v. State*, 11 Kan. App. 2d 70, 71, 713 P.2d 489 [1986]). Second, where an issue, although moot, is capable of repetition and raises concerns of public importance, a court may address the issue. *Skillett*, 30 Kan. App. 2d at 1048.

Although Kansas appellate courts have not had an occasion to consider the mootness question in the context of a State's appeal, this court has considered whether a criminal defendant's appeal of a conviction becomes moot when the defendant has served the entire sentence imposed. See *State v. Flanagan*, 19 Kan. App. 2d 528, Syl. ¶ 1, 873 P.2d 195 (1994).

"[W]e hold that a criminal contempt conviction does not become moot because a defendant may have served his or her time on that conviction. We recognize that the judicial system is an integral part of American life, and a criminal contempt conviction cannot help but affect a defendant's life if he or she appears before a judge who becomes aware of that conviction. That fact, and other possible collateral consequences of this conviction, are too obvious to declare this appeal moot simply because defendant cannot be subjected to additional jail time." 19 Kan. App. 2d at 529-30.

Aside from the collateral consequences exclusively attending a criminal contempt conviction, any criminal conviction possesses collateral consequences that are not perhaps immediately discernible. The same collateral consequences that support a criminal defendant's interest in challenging a conviction after the immediate

consequences of the conviction no longer exist also support the State's interest in preserving a criminal conviction. See *State v. Jordan*, 716 A.2d 1004, 1007 (Maine), *cert. denied* 525 U.S. 1007 (1998) ("If the defendant has an interest in avoiding the collateral consequences of a conviction, then the State has an equally compelling interest in securing a conviction to effect those consequences.").

"[E]ven after a defendant has served the full measure of his sentence, a State retains a strong interest in preserving the convictions it has obtained. States impose a wide range of disabilities on those who have been convicted of crimes, even after their release. For example, in California, . . . persons convicted of a felony may be disqualified from holding public office, subjected to restrictions on professional licensing, and barred from possessing firearms. [Citation omitted.] Further, each of the 50 States has a statute authorizing enhanced sentences for recidivist offenders. [Citations omitted.]" *Daniels v. United States*, 532 U.S. 374, 379-80, 149 L. Ed. 2d 590, 121 S. Ct. 1578 (2001).

Collateral consequences arising from a criminal conviction are generally presumed, and the United States Supreme Court has abandoned inquiry into the actual existence of specific collateral consequences arising from criminal convictions. See *Sibron v. New York*, 392 U.S. 40, 55, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). There is no principled reason collateral consequences presumed to have arisen from a conviction will not support the State's interest in retrying the defendant, just as such collateral consequences would be presumed if the defendant sought to challenge her convictions. Even if the particular convictions at issue in this appeal do not affect the collateral consequences imposed upon the defendant because of her other convictions, the State has an interest in prosecuting a violation of the law and in redressing the victims of that violation, including members of society at large. See *State v. Kluttz*, 9 Conn. App. 686, 710, 521 A.2d 178 (1987). The State's appeal is not moot.

## DOUBLE JEOPARDY

The real issue upon which this appeal revolves is whether double jeopardy prevents the defendant from being retried for convictions vacated on the basis of prosecutorial misconduct. The State chal-

lenges the district court's ruling that double jeopardy bars retrial. The defendant argues in support of the district court's decision, contending the prosecutorial misconduct was intentionally calculated to coerce the defendant into moving for a mistrial and, therefore, should be barred by double jeopardy. Review of a question concerning the application of double jeopardy is a question of law over which an appellate court possesses unlimited review. See *United States v. McAleer*, 138 F.3d 852, 855 (10th Cir.), *cert. denied* 525 U.S. 854 (1998).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits a person from being twice placed in jeopardy for the same offense. The protection of the Double Jeopardy Clause contains three components, "shield[ing] an accused from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Mertz*, 258 Kan. 745, Syl. ¶¶ 2, 3, 907 P.2d 847 (1995). The Double Jeopardy Clause is applicable to the states through the Fourteenth Amendment to the United States Constitution. *State v. Wittsell*, 275 Kan. 442, 445, 66 P.3d 831 (2003).

Section 10 of the Kansas Constitution Bill of Rights contains an analogous protection. The defendant invites this court to interpret the Kansas Constitution to provide greater rights than the federal Constitution affords. However, the Kansas Supreme Court, in interpreting § 10 of the Kansas Constitution Bill of Rights, has stated the protection provided therein is " 'equivalent to the protection guaranteed in the United States Constitution.' " *Wittsell*, 275 Kan. at 446 (quoting *Mertz*, 258 Kan. at 749). This court is bound by Kansas Supreme Court precedent, absent some indication the court is departing from that precedent. *State v. Burton*, 35 Kan. App. 2d 876, 882, 136 P.3d 945, *rev. denied* 282 Kan. 792 (2006). Because Kansas courts have never construed § 10 of the Kansas Constitution Bill of Rights to extend greater rights than the Double Jeopardy Clause of the Fifth Amendment, it is unlikely our Supreme Court will depart from the precedent established in *Wittsell*. See *State v. Schoonover*, 281 Kan. 453, 474, 133 P.3d 48 (2006).

The constitutional prohibition against double jeopardy does not absolutely bar retrial. When an initial trial results in a conviction, as here, and the conviction is reversed because of trial error (including prosecutorial misconduct), double jeopardy generally does not bar retrial. *Lockhart v. Nelson*, 488 U.S. 33, 38, 102 L. Ed. 2d 265, 109 S. Ct. 285 (1988); *Burks v. United States*, 437 U.S. 1, 15, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) ("[Reversal for trial error] is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.").

However, when a conviction is reversed for insufficiency of the evidence, double jeopardy bars any further prosecution for that particular offense. *Lockhart*, 488 U.S. at 39 (citing *Burks*, 437 U.S. at 18); *State v. Pabst*, 268 Kan. 501, 512, 996 P.2d 321 (2000). In *DuMars I*, this court determined the State had presented insufficient evidence to support the defendant's conviction for child endangerment related to C.W., but the State had presented sufficient evidence of the drug-related charges. 33 Kan. App. 2d at 755-56.

The defendant suggests the reversal of her convictions ought to be treated as a mistrial because she sought a mistrial in the initial proceedings but the district court denied her motion. The defendant implies that, if the district court had granted her motion for mistrial, the State would be barred from seeking to retry any of the charges. However, this case does not involve a mistrial but a reversal of some of the defendant's convictions. The United States Supreme Court has recognized a fundamental difference between a case resolved by mistrial and a case resolved by an adjudication of guilt. See *United States v. Jorn*, 400 U.S. 470, 484, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971) ("For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal.").

The defendant received a complete trial in this case, which ended in convictions on most of the charged offenses. Even though

the defendant requested a mistrial, the request was overruled by the district court, and the case proceeded to a verdict. The Tenth Circuit Court of Appeals has addressed a similar situation in *McAleer*. *McAleer* involved several defendants who requested a mistrial, contending the prosecutor's repeated questioning concerning a witness' right to avoid self-incrimination prejudiced their trial. The district court denied the motion, and the defendants were convicted. After trial, the defendants successfully moved the district court to set aside the convictions. When the United States sought to retry the defendants, the defendants argued that double jeopardy barred further prosecution. The Tenth Circuit interpreting *Oregon v. Kennedy*, 456 U.S. 667, 673, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), rejected the argument, stating:

"[N]o mistrial was declared in this case. The district court never granted Defendants' motions for a mistrial. The case proceeded to the jury and guilty verdicts were returned. Defendants did not obtain a mistrial, but instead succeeded in having the district court set aside the guilty verdicts. Although Defendants attempt to characterize the district court's order setting aside the jury verdicts and granting a new trial as the functional equivalent of a mistrial, Defendants miss a crucial distinction. The *Kennedy* prosecutorial misconduct exception is a narrow one, designed to protect the defendant's right to 'have his trial completed before the first jury empaneled to try him.' [Citation omitted.] Without this exception a prosecutor could intentionally provoke a defendant into requesting a mistrial and the defendant would then be prevented from later invoking a double jeopardy bar to his retrial. Such a result would render a defendant's 'valued right to complete his trial before the first jury' a 'hollow shell.' [Citation omitted.] Defendants, however, do not require such protection because without the declaration of a mistrial, they were not deprived of their 'valued right' to have their case submitted to the first jury, and perhaps have the dispute end with an acquittal. For these reasons, we conclude that the mistrial exception for prosecutorial misconduct set forth in *Kennedy* simply does not apply to Defendants." 138 F.3d at 855-56.

Based on *McAleer*, we conclude double jeopardy does not bar retrial where a criminal defendant has obtained a reversal of his or her conviction on appeal on the basis of trial error, which includes prosecutorial misconduct. See *Burks*, 437 U.S. at 15. However, even if we considered the present case to involve a retrial following mistrial, we conclude double jeopardy does not bar the State's attempt to retry the defendant under the circumstances presented in this case.

Normally, when a criminal defendant seeks a mistrial, double jeopardy does not bar retrial. *Kennedy*, 456 U.S. at 672; *State v. Muck*, 262 Kan. 459, 466, 939 P.2d 896 (1997). However, where prosecutorial conduct is designed to "goad" a criminal defendant into seeking and obtaining a mistrial, double jeopardy bars further prosecution for the same offense. *Kennedy*, 456 U.S. at 673; *State v. Williams*, 268 Kan. 1, 7, 988 P.2d 722 (1999). The exception, however, is extremely limited.

"Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.' *United States v. Scott*, 437 U.S. 82, 93[, 57 L. Ed. 2d 65, 98 S. Ct. 2187] (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, '[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.' *United States v. Dinitz*, [424 U.S. 600,] 609[, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976)]. Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy*, 456 U.S. at 675-76.

Applying the *Kennedy* standard to the facts presented in the present case leads to a conclusion that the district court improperly sustained the defendant's objection to retrial. The defendant's motion for mistrial was based upon the admission of allegedly prejudicial hearsay testimony elicited by the prosecution in rebuttal to the defense examination of the same witness. Here, as the district judge noted in overruling the defendant's motion for mistrial, "[the prosecutor] called a witness to impeach the testimony of Ms. Metro, and I think you can do that under Kansas law." Clearly, this court concluded the district court's admission of some of the hearsay statement to be error and held the prosecutor committed misconduct by soliciting such comments. *DuMars I*, 33 Kan. App. 2d at 739-46. Nevertheless, the district court's comments demonstrate the prosecution's misconduct, while prejudicial, was intended to obtain a conviction, not to force the defendant into moving for a

mistrial. Prosecutorial misconduct committed in bad faith is not sufficient under *Kennedy* if the misconduct is designed to obtain a conviction rather than to induce a defendant's request for a mistrial.

Here, the defendant cites no other bases for the motion for mistrial, and an independent review of the trial record reveals no other requests for a mistrial. Consequently, the defendant has failed to satisfy the stringent test announced in *Kennedy* requiring a mistrial to have been requested by the defendant because the prosecutor *intentionally goaded* the defendant into requesting a mistrial. Double jeopardy does not bar further prosecution on the defendant's reversed drug-related convictions. See 456 U.S. at 675-76.

We note that our Supreme Court recently reached a similar conclusion in *State v. Morton,* 283 Kan. 464, Syl. ¶¶ 2-3, 6, 153 P.3d 532 (2007). But, at the time of this court's consideration, the mandate had not yet issued.

## DUE PROCESS: FUNDAMENTAL FAIRNESS

Alternatively, the defendant argues the State should be barred from retrying her on the drug-related charges because retrial would be fundamentally unfair.

"Not every trial error or infirmity which might call for application of an appellate court's supervisory powers correspondingly constitutes a failure to observe that fundamental fairness that is essential to the very concept of justice." *State v. Cady,* 248 Kan. 743, 758, 811 P.2d 1130 (1991) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 40 L. Ed. 2d 431, 94 S. Ct. 1868 [1974]). Application of the fundamental fairness component of the Fifth Amendment's Due Process Clause should be reserved to intolerable conduct which shocks mind and conscience. See *State v. Singleton,* 33 Kan. App. 2d 478, 489, 104 P.3d 424 (2005).

Fundamental fairness implies a balancing of the interests involved in criminal prosecution. Although a defendant possesses a significant interest in being free from harassment and the burden of repeated trials, the State possesses a significant interest in the sound administration of justice.

"Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." *United States v. Tateo*, 377 U.S. 463, 466, 12 L. Ed. 2d 448, 84 S. Ct. 1587 (1964).

Retrial of the defendant in this case balances significant interests and does not rise to the level of shocking or intolerable conduct. Consequently, we conclude there is no violation of the fundamental fairness component of due process in allowing the State to proceed with prosecution of the attempted manufacture and possession of drug paraphernalia charges in this case. The district court's dismissal of the above charges was error. The judgment of the district court is reversed, and the case is remanded to the district court for retrial on the attempted manufacture and possession of drug paraphernalia charges.

Reversed and remanded for further proceedings.