No. 117,861

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEIJAUN D. LEANNDRE LAMB,
*Defendant*,
(PATTRICK TOWNER),
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court should consider a case that would otherwise be moot if it (1) is of statewide interest and of the nature that public policy demands a decision, such as those issues that exonerate the defendant; (2) remains a real controversy; or (3) is capable of repetition.

2.

A contempt finding for failure to testify in a case that is subsequently dismissed without prejudice is an issue subject to repetition in light of the fact that the case may be refiled and the witness again required to testify.

3.

To present a compulsion defense, just like any other defense, there must be evidence to support it. And if the district court refuses to allow the introduction of a litigant's evidence related to the defense, the litigant must make a proffer of the evidence to preserve the issue on appeal.

1

4.

A judge has no independent responsibility to seek out evidence of duress from a recalcitrant witness. The witness has the affirmative duty to inform the appropriate authorities and the court of any threats.

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed January 10, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

ARNOLD-BURGER, C.J.:  The State of Kansas charged Deijaun D. Leanndre Lamb with the murder of Geovani Plakio and the attempted murder of Pattrick Towner. Towner was called to testify at Lamb's preliminary hearing and identify Lamb as the shooter. Deputies transported Towner and Lamb to the courthouse together and then placed them in the same holding cell. When called to the stand, Towner refused to testify. The district court explained to Towner that the court could hold Towner in contempt if he refused to testify and gave him several opportunities to answer the State's questions. Towner refused to do so. The district court held Towner in contempt and sentenced him to six months' imprisonment.

On appeal, Towner argues he was threatened into not testifying and the district court erred by not holding an in camera hearing, without Lamb present, so that Towner could explain why he was not testifying. Because we find that a judge has no duty to sua sponte hold an in camera hearing to determine if a witness is fearful to testify when the

2

witness makes no such request, we affirm the district court's order finding Towner in direct criminal contempt of court.

## FACTUAL AND PROCEDURAL HISTORY

In October 2016, the State charged Lamb with first-degree murder for the killing of Plakio and the attempted killing of Towner and Dominique Lee Boyles. According to the probable cause affidavit, Towner—during two interviews with police—stated that he was driving the car in which Plakio was shot, that he witnessed the shooting, and that Lamb killed Plakio.

At Lamb's preliminary hearing, Towner denied knowing Lamb and said that he would not be able to identify him if he saw him on the street. The prosecutor asked the court to recess so that she could speak with Towner outside the courtroom. The court granted the request. After returning to court, the prosecutor once again asked Towner whether he knew Lamb. Towner replied that he did not "want to get involved with this case, so I'll just leave it at that." Towner stated that he was refusing to testify.

The prosecutor asked the district court to hold Towner in contempt. The court asked Towner's attorney whether Towner had any Fifth Amendment privilege that would allow him to not testify. Towner's attorney replied that he was unaware of any privilege. After Towner spent some time speaking with his attorney, the court ordered Towner to testify and asked whether he understood that the court could hold him in contempt for refusing to do so. The court informed Towner that he could be held in jail for up to six months if there was a contempt proceeding and the court found him guilty. Towner stated that he understood but again refused to testify. The court gave Towner another opportunity to testify but he refused to do so. The court found Towner in contempt and ordered him incarcerated.

3

The court continued the case a few days and at the next hearing Towner was again called to testify. After speaking with his attorney, Towner told the court that he was "just going to stay in contempt of Court." The court ordered that deputies return Towner to jail. Lamb's attorney moved to dismiss the charges. The prosecutor asked for a continuance to try to convince Towner to cooperate. The prosecutor informed the court that she had spoken with Towner the night before he was called to testify at the first hearing and that then he was willing to testify. But on the way to his first appearance to testify, deputies transported Towner from jail to the courthouse in the same vehicle as Lamb and then placed him in a holding cell in the courthouse with Lamb. The prosecutor believed that Towner had been threatened by someone into not testifying against Lamb, but she could not present any evidence to support her belief. The court agreed to continue the case a few more days to give Towner another chance to purge himself of the contempt.

At the final hearing, Towner refused to testify and asked to remain in contempt of court. The court found a lack of probable cause against Lamb and dismissed the case without prejudice. Towner appeals the court's order of contempt.

ANALYSIS

On appeal, Towner argues the district court erred by failing to provide an in camera hearing, outside Lamb's presence, for Towner to explain why he would not testify. But before we get to the merits of his claim, we must determine whether procedural bars prevent us from reaching the merits. The State asserts that Towner's appeal is moot and that, even if it is not, the court cannot consider issues raised for the first time on appeal.

4

*Towner's appeal is not moot.*

The parties agree that Towner has completed his six-month sentence for contempt. The court can dismiss an appeal as moot if """it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.""" *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014). The State argues that because Towner has completed his sentence any judgment entered on his behalf would be ineffectual.

Because mootness is a doctrine of court policy, which is rooted in court precedent, appellate review of the issue is unlimited. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

Twenty-five years ago, this court addressed whether an appeal is moot because the appellant has finished serving his or her sentence for contempt. In *State v. Flanagan*, 19 Kan. App. 2d 528, 529-30, 873 P.2d 195 (1994), we found that such an appeal is not moot. The court reasoned:

> "[T]he judicial system is an integral part of American life, and a criminal contempt conviction cannot help but affect a defendant's life if he or she appears before a judge who becomes aware of that conviction. That fact, and other possible collateral consequences of this conviction, are too obvious to declare this appeal moot simply because defendant cannot be subjected to additional jail time." 19 Kan. App. 2d at 529-30.

The State argues that despite the court's concerns in *Flanigan*, a contempt citation is not a criminal conviction, nor does it appear on a defendant's criminal history. Any collateral consequences that may result are speculative at best. Towner simply asks us to

follow the lead of *Flanigan*. He fails to advise us of any specific collateral consequences that may result from the court's contempt finding.

Generally, appellate courts in Kansas do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 2, 286 P.3d 866 (2012). But because the mootness doctrine is court made, it is also subject to court-recognized exceptions which have been judicially created since *Flanigan*. An appellate court should consider a case that would otherwise be moot if it "(1) is of statewide interest and of the nature that public policy demands a decision, such as those issues that exonerate the defendant; (2) remains a real controversy; or (3) is capable of repetition." *State v. Hollister*, 300 Kan. 458, 458-59, 329 P.3d 1220 (2014). Towner fails to assert the application of any of the exceptions.

Even so, because we are not convinced that there are any ongoing consequences that may result from the district court's finding of contempt, the first two exceptions do not apply. But we are concerned that this issue may be subject to repetition, not only in other similar cases in the future—albeit rare—but it could be repeated in this case. The charges against Lamb were dismissed by the court without prejudice following a preliminary hearing. If the State is somehow able to offer Towner protection or gather additional evidence beyond Towner's statements to police, it could refile the murder charges. See K.S.A. 2018 Supp. 21-5107(a) (no time limitation on the filing of murder charges). Towner could be back in the same position. As a result, this case is not moot.

*Towner has preserved his claim of error.*

Towner raises only one claim of error on appeal. He argues that because the court had information from the prosecutor that suggested Towner was being threatened by Lamb, the court had a duty to discuss the issue with Towner in camera before finding him in contempt. Towner's attorney was with him each time the court ordered him to testify

6

and Towner refused. His attorney spoke to him outside the presence of the judge and prosecutor both times. At no time did Towner request an in camera discussion with the judge.

The State argues that Towner has failed to preserve this issue for appeal because there was no contemporaneous request made to discuss the reasons for his refusal with the court. Towner responds by framing this as solely a sufficiency of the evidence claim which he can raise for the first time on appeal, citing *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008) ("There is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve the question for appeal.").

The law in Kansas is clear. "If the issue was not raised below, there must be an explanation why the issue is properly before the court. A party failing to explain why an issue being raised for the first time on appeal is properly before the court risks having that issue deemed waived or abandoned." *Williams*, 298 Kan. 1075, Syl. ¶ 4. But we are willing to accept Towner's position that his claim is more like a sufficiency of the evidence argument than an evidentiary error. In essence, he argues that because the judge disregarded that he was under duress and did not provide Towner a safe environment to set forth his defense, the evidence was insufficient to find him in contempt. Although we agree this is a close call on whether Towner properly preserved his claim of error, we are willing to proceed to the merits given the possibility that Towner could be in the same position, in this case, in the future.

*The district court did not err in holding Towner in contempt of court.*

Towner does not dispute that he refused to follow a court order. Instead, he argues the district court should have provided him with a chance to explain his fear without Lamb present. Towner also does not challenge the actual sanction imposed, six months in

jail. Accordingly, we review de novo whether the alleged conduct was contemptuous given all the circumstances. *State v. Gonzalez*, 290 Kan. 747, 754, 234 P.3d 1 (2010).

There are at least three reasons Towner's claim of error fails.

1. *Towner failed to make a proffer of the evidence he wanted the court to consider.*

Compulsion is a statutory defense in Kansas.

> "(a) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which such person performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if such person reasonably believes that death or great bodily harm will be inflicted upon such person or upon such person's spouse, parent, child, brother or sister if such person does not perform such conduct.
>
> "(b) The defense provided by this section is not available to a person who intentionally or recklessly places such person's self in a situation in which such person will be subjected to compulsion or threat." K.S.A. 2018 Supp. 21-5206.

To present a compulsion defense, just like any other defense, there must be evidence to support it. And if the court refuses to allow the introduction of a litigant's evidence related to the defense, the litigant must make a proffer. In other words, the party must show the court what the party would present if the court were to allow the evidence. See K.S.A. 60-405 (no decision can be "reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers"). A defendant's failure to proffer excluded evidence makes it impossible for an appellate court to determine whether a legally erroneous exclusion was harmless. *State v. Redick*, 307 Kan. 797, Syl. ¶ 4, 414 P.3d 1207 (2018).

8

Towner essentially asserts that the court should have allowed him to proffer evidence, in camera, to the court about his defense of compulsion. But neither he nor his attorney ever requested to do so, even though the court gave them several opportunities to talk outside the presence of Lamb. The judge implored Towner, "Do you have *any other reason*, other than the fact that that you do not wish to be involved in this case?" (Emphasis added.) Towner replied, "No, your honor." His failure to make a proffer is fatal to his claim of error.

2. *The cases Towner summarily relies on do not support his position.*

It is essential when a litigant cites cases in an appellate brief in support of his or her position that the cases support the litigant's position. Towner cites three federal cases to support his argument. But on close review the cases do not favor Towner. We will examine each.

A federal district court held Mark Gravel in contempt for his refusal to testify before a grand jury. *In re Grand Jury Proceedings*, 605 F.2d 750, 751 (5th Cir. 1979). Gravel explained, during an in camera discussion with the judge, that he would not testify because he was being actively threatened. On appeal, the court held that the district court did not err in finding Gravel in contempt. Even if the court considered fear to be a legitimate factor against a finding of contempt, it did not find that Gravel had raised a sufficient defense. 605 F.2d at 752-53. The government had offered to protect Gravel and he had refused the protection, instead choosing to not testify. Gravel's case does not hold that a court must recognize fear as an affirmative defense to a finding of contempt. It simply holds that the evidence was insufficient to support his defense given the State's offer of protection. The Fifth Circuit Court of Appeals also distinguished duress as a reason for the refusal to testify versus duress as a mitigation factor in determining a sanction. 605 F.2d at 752-53. "In both civil and criminal contempt cases this circuit has held that fear for personal and family safety is not a defense to a charge arising from

9

refusal of a witness to testify. We have, however, held that such fear is a legitimate factor in mitigation." 605 F.2d at 752.

In *United States v. Patrick*, 542 F.2d 381, 386-88 (7th Cir. 1976), the appellate court held duress could be a defense to contempt but that Leonard Patrick failed to present evidence supporting his case. According to Patrick, he and his family were threatened about his possible testimony. But the court noted: "Patrick made no attempt to inform the court as to his fears, the basis therefor, and the steps he had taken to alleviate the alleged danger so that he might comply with the law." 542 F.2d at 388. The court cited with approval the Tenth Circuit Court of Appeals opinion in *Shannon v. United States*, 76 F.2d 490, 493 (10th Cir. 1935). *Patrick*, 542 F.2d at 388.

> "'Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion.'" 542 F.2d at 386-87.

The court noted: "'[A] veiled threat of future unspecified harm . . . is not the equivalent of an immediate threat of death or severe bodily injury.'" *Patrick*, 542 F.2d at 388.

The third and final case Towner relies on found that fear for personal or family safety is a mitigating factor when determining the sentence for a contempt, but that "[f]ear for personal and family safety . . . is no defense to the crime of refusing to testify." *United States v. Gomez*, 553 F.2d 958, 959 (5th Cir. 1977).

None of these cases support Towner's argument. Like the defendant in *Patrick*, Towner failed to inform the court of his fears. See *Patrick*, 542 F.2d at 388. Without informing the court or State, Towner cannot expect an offer of protection like the defendant in *In re Grand Jury Proceedings*. Even if Towner did inform the court or State

that someone had threatened him and the State failed to extend an offer of protection, that does not mean that the court could not hold Towner in contempt for his refusal to testify. See *In re Grand Jury Proceedings*, 605 F.2d at 752-53 (fear for personal and family safety is not a defense to a charge arising from refusal of a witness to testify). A witness has a responsibility to "take the reasonable steps available in an attempt to extricate himself from the apparent danger." *Patrick*, 542 F.2d at 388. This includes an affirmative duty to inform the appropriate government authorities and the court of the threat. 542 F.2d at 388. Although the prosecutor suspected Towner was being threatened, she had no proof. And Towner refused to provide any.

Finally, the district court cannot be expected to consider whether threats against Towner should lead to a lighter sentence for contempt when Towner did not inform the court that he was threatened. See *Gomez*, 553 F.2d at 959. Even so, Towner does not challenge the sanction here, only the sufficiency of evidence for the finding of contempt. In sum, because Towner presents no caselaw to support his claims, we must conclude there is none.

### 3. *A judge has no independent responsibility to seek out evidence of duress from a recalcitrant witness.*

Towner believes it was error for the judge to take "no action to ensure that Towner was not refusing to testify due to threats from Lamb." Yet Towner presents no authority for this central proposition—that a judge must independently and sua sponte marshal the resources necessary for a witness to claim a defense of duress or coercion, particularly when, as here, the witness has his own legal counsel at each hearing. As the State points out, the overwhelming majority of courts to address the issue have held that fear does not provide a basis for a witness' refusal to testify. See *Howell v. State*, 465 Md. 548, 563 n.13, 214 A.3d 1128 (2019) (citing 12 cases from 12 jurisdictions). So necessarily, a requirement that the court sua sponte investigate whether a witness is being placed in fear

would serve no purpose. As the Seventh Circuit Court of Appeals stressed in *Patrick*, it is the witness who has the affirmative duty to inform the appropriate government authority and the court of any threats. 542 F.2d at 388.

The district court's decision finding Towner in direct criminal contempt of court is affirmed.

Affirmed.