NOT DESIGNATED FOR PUBLICATION

No. 116,334

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ELIZABETH CLARKSON,
*Appellant*,

v.

TABITHA LEHMAN, IN HER OFFICIAL CAPACITY AS ELECTIONS
COMMISSIONER OF SEDGWICK COUNTY, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TIMOTHY G. LAHEY, judge. Opinion filed August 31, 2018. Appeal dismissed.

*Randall K. Rathbun* and *Benjamin K. Carmichael*, of Depew, Gillen, Rathbun & McInteer, LC, of Wichita, for appellant.

*Michael L. North*, assistant county counselor, for appellee.

Before ATCHESON, P.J., BUSER, J., and BURGESS, S.J.

BUSER, J.:  This appeal is the latest legal effort by Elizabeth Clarkson to obtain "Real Time Audit Logs" (RTAL), a specific brand name of what is generically referred to in the industry as "Voter Verifiable Paper Audit Trails" (VVPAT) used by the Sedgwick County Election Office in its voting machines. Clarkson filed this lawsuit against Tabitha Lehman, the Sedgwick County, Kansas, Election Commissioner, in order to obtain, review, and analyze RTAL to assess the accuracy of voting machines at a Wichita polling site in 2014.

1

As discussed below, upon our review of the district court's judgment, the record on appeal, the parties' appellate briefs, oral argument, and supplemental briefs, we conclude this appeal is moot, and that no exception to the mootness doctrine warrants our review of the district court's judgment. Accordingly, the appeal is dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

The parties agree that:

"RTAL are paper strips loaded in voting machines. Their function is to allow the voter to confirm his or her vote on any candidate or question by comparing his or her choice with the paper strip that is shown in a small portal or window in the voting machine itself. . . .

"RTAL are not limited to 'statistical information,' but contains information such as the identification of the voting equipment used to cast the ballot, the time the vote session started, the precinct, the ballot style and language used, and which candidate or ballot initiative was selected by the voter."

Clarkson separately asserts, however, that "another purpose for RTALs is for recounts and audits."

Clarkson's quest for RTAL began on June 18, 2013, when she initially filed a pro se Kansas Open Records Act (KORA) lawsuit against Lehman as Sedgwick County Elections Commissioner. See K.S.A. 45-215 et seq. In her lawsuit, Clarkson asserted that RTAL were open public records under KORA. By obtaining access to RTAL, Clarkson claimed she could "verify the official outcome for precinct 208, in which she resides and votes, by conducting a post-election audit of the results for the November 2010 general election." Clarkson alleged she was a professional statistician with over 25 years' experience and was "competent to perform a post-election audit."

2

In her lawsuit, Clarkson sought the following relief: "[A] court order instructing [Lehman] to allow Elizabeth Clarkson and her designated assistants access to the [R]TAL paper tape records of the November 2010 general election for Precinct 208 in Sedgwick County in order to conduct an audit of the results." Lehman objected to any disclosure of RTAL because, in her opinion, they were not public records subject to disclosure under KORA.

After a bench trial, on August 26, 2013, District Judge Mark Vining entered judgment in favor of Lehman and ruled that the election commissioner was not required to disclose the RTAL that Clarkson sought in her KORA lawsuit. In particular, the district judge reasoned:

> "[E]lection results, voting records are in an area of law that is specifically set out in statutes separate and distinct from [KORA] and how elections are run and what records are kept. And while there is no specific exemption that I can find in [KORA] itself, I do find based upon the information that is provided in the election definitions and applications in Article 25 that the request that you have made is outside of the scope of what is considered open records information and should not be disclosed."

Clarkson did not appeal the district court's judgment.

Two and a half years later, on February 2, 2015, Clarkson filed another pro se lawsuit which is the subject of this appeal. In general, this lawsuit mirrored the 2013 lawsuit as it sought declaratory and injunctive relief for disclosure of RTAL under KORA. Similar to her 2013 lawsuit, Clarkson sought "a court order instructing [Lehman] to allow [Clarkson] and her designated assistants access to the Sedgwick County [R]TAL paper tape records of the November 2014 general election in order to conduct an audit of the results." According to Clarkson, she had "a colleague in the political science department at Wichita State University who will provide assistance in the way of student workers to help conduct the audit."

3

After procedural rulings, on April 1, 2015, Clarkson filed a pro se "Amended Complaint for Declaratory and Injunctive Relief Pursuant [to] K.S.A. 4[5]-222," and the legal proceedings continued with Lehman, once again, as the defendant. In particular, Clarkson sought "access to the [RTAL] from the November 2014 general election in Sedgwick County, Kansas." Clarkson stated: "The selection of this specific dataset is attributable to the increased voter turnout in general elections, which offers a larger and more viable sample for statistical research purposes." Clarkson pled that "[s]uch an audit is required in order to accurately assess and calculate the error rate of [v]oting [m]achines." Her purpose in collecting, analyzing, and auditing the RTAL, according to Clarkson, was "to write an academic journal research article on Voting Machine performance. [Clarkson] intends to submit her findings of her audit of [RTAL] to an appropriate peer-reviewed publication."

In her amended complaint, Clarkson averred that she had asked Lehman for access to the RTAL pursuant to KORA but that her request was denied. Clarkson invoked K.S.A. 45-222(a) and asked the district court to order injunctive or other relief to give her access to the RTAL. According to Clarkson, her "audit of [RTAL] shall not involve public records exempt from [KORA] at K.S.A. 45-211" and her "audit of [RTAL] shall be strictly limited to access of a dataset for statistical analysis."

Notably, Clarkson did not request an election recount in either her 2013 pleading or in her original or amended 2015 pleadings. The pleadings also did not refer to any Kansas election statutes found in Chapter 25 of the Kansas Statutes Annotated.

Lehman filed an answer in response to the 2015 lawsuit. In the answer, Lehman admitted that she had received an open records request from Clarkson after the November 2014 general election. This request was for election materials and records relating to Clarkson's polling site at Countryside Christian Church. Lehman acknowledged providing a variety of election materials and records to Clarkson in response to her

4

request.

Lehman also confirmed that she had denied Clarkson's request for RTAL. According to Lehman: "This was denied for several reasons, including that disclosure of such would be contrary to Kansas criminal law; could identify specific results to individual voters; was not subject to the [KORA], and would be unnecessarily burdensome and expensive to produce." The answer also set forth affirmative defenses, including that the "cause of action is barred by the doctrines of res judicata and collateral estoppel. The identical issues presented by [Clarkson] in this action have previously been litigated" in 2013.

At the conclusion of discovery, on January 6, 2016, Lehman filed a motion for summary judgment. Lehman presented a three-part argument: First, she invoked the doctrines of res judicata and collateral estoppel to argue that Clarkson's KORA lawsuit against Lehman in 2013 mirrored the same parties and legal issues in this 2015 lawsuit, and as a consequence, barred the latest litigation. Second, Lehman asserted that under K.S.A. 25-2422(a)(1), the release of RTAL was a violation of Kansas criminal law—unauthorized disclosure of the contents of a ballot. Third, Lehman contended that because RTAL are not open public records under KORA their disclosure may not be compelled.

The next day, on January 7, 2016, Clarkson filed a pretrial questionnaire, which made no mention of KORA. Instead, Clarkson now stated that she had "made a timely request for a recount after the November 2014 election. [Lehman] refused to allow the recount. [Clarkson] seeks an order from the Court requiring [Lehman] to turn over RTAL tapes in question[] so that an appropriate recount can be accomplished." Clarkson's questionnaire identified only one question of law: "Is [Clarkson] entitled to a recount pursuant to statute?"

5

In her pretrial questionnaire, Lehman reiterated the issues raised in her motion for summary judgment. She also contended:

> "Any request for a 'recount' of the 2014 election is beyond the scope of requested relief in [Clarkson's] Petition of February 2, 2015 which requests that she 'personally verify the official outcome' of the 2014 general election in whole or in part to 'submit the results of her audit to an appropriate peer-reviewed publication.' This is properly interpreted as a petition for relief under [KORA], not for a recount under the Kansas Election Code at Chapter 25 of [the Kansas Statutes Annotated]."

Lehman's questionnaire identified several questions of law challenging the legal propriety of Clarkson's claim that RTAL should be disclosed to her pursuant to Kansas election recount procedures. A pretrial conference order incorporating both parties' legal contentions was filed by the district court on January 21, 2016.

On February 1, 2016, Clarkson filed a response to Lehman's motion for summary judgment. In this response, Clarkson contended the doctrines of res judicata and collateral estoppel did not apply to bar this latest litigation because

> "[t]he previous pro se case filed by Dr. Clarkson in 2013—to get results in her precinct from the 2010 election—was based upon a request to see ballots under [KORA]. She did not request a recount in that election.
>
> "The issue of ballots as open records does not have anything to do with the current litigation. Res judicata and collateral estoppel have no application whatsoever to Dr. Clarkson's demand in this case for a statutorily based recount."

In reply to Clarkson's response to Lehman's summary judgment motion, the election commissioner stated: "Through creative and calculated timing, [Clarkson] has now taken the liberty to alter the very heart of her argument and change its focus from one rooted in [KORA] to one now rooted in the Kansas election recount statutes." Lehman argued that "regardless of how [Clarkson] labels this lawsuit, it is clear that her

ultimate goal remains the same: to gain personal access to [RTAL] from the November 2014 General Election. This request is clearly one for *records*, not a recount." Lehman also argued that the recount theory was flawed because Clarkson's request was procedurally and substantively defective, that Kansas law did not allow the relief that she was seeking, and disclosure of RTAL would still violate the criminal prohibitions of K.S.A. 25-2422(a)(1). On the same day that Lehman filed her reply, February 10, 2016, she also filed a motion to dismiss the amended petition for lack of subject matter and personal jurisdiction.

A hearing on Lehman's motion for summary judgment and motion to dismiss was held on February 18, 2016, before District Judge Timothy G. Lahey. On April 22, 2016, the district court filed an order summarily denying Lehman's motion to dismiss. The district court, however, granted summary judgment "on the issue of whether [Clarkson] shall be granted access to [RTAL] for the 2014 election." This ruling was based on the bar of collateral estoppel given that the 2013 lawsuit "dealt with a requested audit and the action before the court here is a requested recount, in both cases the relief sought is disclosure of RTAL." The district court also determined "that the RTAL is not a statutorily identified method of voting and cannot be used in the recount process."

The district court, however, denied the motion for summary judgment "on the issue of whether [Clarkson] is entitled to an election recount for the 2014 election" and set the matter for trial subject to two limitations. First, the district court ruled that under K.S.A. 25-3107(b) any recount would be limited to question submitted elections. Second, under K.S.A. 25-3107(b): "[O]nly a special election board appointed by the county election officer may conduct a recount of the ballots. As such, [Clarkson] is not legally entitled to participate in the recount process."

No bench trial was held. A journal entry of judgment filed on June 23, 2016, stated that on March 22, 2016, the parties made arguments to the district court which ruled:

7

"The Court's analysis of this issue has already been the subject of a motion for summary judgment. The Court hereby holds that [Clarkson] is not entitled to a recount in the manner she seeks and her request is hereby denied. The Court adopts by reference its ruling entered on February 18, 2016 on [Lehman's] motion for summary judgment."

Clarkson filed this timely appeal.

At oral arguments, Lehman advised our court that the results of the 2014 general election in Sedgwick County had been certified as required by Chapter 25 of the Kansas Statutes Annotated, and that any recount would not affect the outcome of that election. After oral arguments, our court asked the parties to submit supplemental briefing on, among other subjects: Is this appeal moot? If so, should this court retain the appeal? Both parties filed timely supplemental responses.

ANALYSIS

As detailed in the factual and procedural background section, Clarkson's lawsuit has transformed over time, leading to the question of whether, at this appellate stage of the litigation, the actual controversy has ended and our court's judgment would be ineffectual for any purpose. In other words, is this appeal moot?

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, which recognizes that the role of the court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted]." *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).

The mootness test has been described as a determination whether "it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights. [Citation omitted.]" *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016). Because mootness is a doctrine of court policy, which was developed through court precedent, appellate review of the issue is unlimited. *Hilton*, 295 Kan. at 849.

Our review of the pleadings in the 2013 and 2015 lawsuits make clear that Clarkson has sought disclosure of RTAL as open public records under KORA in order to personally review and audit RTAL and conduct a statistical analysis to determine the error rate of voting machines. Clarkson's intent upon completion of this analysis is to write an academic research article to submit to a peer-reviewed journal for publication.

A plain reading of Clarkson's petitions filed in both the 2013 and 2015 litigations shows three things: First, Clarkson has consistently and exclusively sought relief by invoking KORA. Second, Clarkson never sought relief by invoking Kansas election laws generally or election recounts as provided by K.S.A. 2017 Supp. 25-3107. Third, in all her pleadings, Clarkson has sought to personally, or though her designees, review, audit, and analyze the RTAL to determine voting machine accuracy.

As the parties prepared for trial and after Lehman filed her motion for summary judgment, however, Clarkson abruptly abandoned her KORA claims. In response to Lehman's motion, Clarkson definitively stated: "The issue of ballots as open records does not have anything to do with the current litigation." Indeed, in arguing against the motion, Clarkson's counsel conceded with regard to the dismissal of her 2013 litigation, "I think Judge Vining was right [Clarkson] was not entitled to look at ballots under the Open Records Act." Finally, unlike her prior pleadings, Clarkson's pretrial questionnaire which was later incorporated into the district court's pretrial order contained no reference to KORA.

9

Instead, for the first time in this litigation, Clarkson sought access to RTAL by way of the Kansas election recount statute, K.S.A. 2017 Supp. 25-3107. As reflected in the pretrial order, however, Clarkson still sought "an order from the Court requiring [Lehman] to turn over RTAL tapes in question[] so that any appropriate recount can be accomplished."

Upon our review of this record, we agree with Lehman's view that after the filing of the motion for summary judgment, Clarkson took the opportunity "to alter the very heart of her argument and change its focus from one rooted in [KORA] to one now rooted in the Kansas election recount statutes." Still, as Lehman argued, "regardless of how [Clarkson] labels this lawsuit, it is clear that her ultimate goal remains the same: to gain personal access to [RTAL] for the November 2014 General Election. This request is clearly one for *records*, not a recount." We agree. While the legal basis for Clarkson's request changed during litigation, Clarkson still sought RTAL from Lehman in order to review and analyze the records.

At the hearing on the motion for summary judgment, Lehman protested that Clarkson's change in the statutory basis for her lawsuit—from claims under KORA to claims grounded in Kansas election laws—had nothing to do with her desire to overturn any election result, but it was simply another method for her to conduct an audit and publish a scholarly article on the results. Lehman suggested this reason for seeking a recount was inappropriate because "[t]he purpose of a recount is [to] either alter or confirm election results."

The district court followed up on this argument by proffering a hypothetical which assumed arguendo that the court ordered Lehman to conduct a recount in this case. The district court then asked, "So [Lehman] does a recount of whatever the appropriate scope is? Then the case is over, right? There's no election contest." Clarkson's counsel agreed, saying, "This doesn't have anything to do with election contests. That's the red herring in

10

here."

In her supplemental briefing, Lehman contends this appeal is moot. She states:

"There is no basis in statutory law for believing that an election recount, even if hypothetically ordered by a court, would legally be able to overturn election results after certification has taken place. . . . [Lehman's] position is that potentially changing election results is the only reason recounts are done. They are designed chronologically to be accomplished before the canvassing process is completed as a goal of having elections get to a defined finishing line. . . . Once the canvassing and certification process has occurred, the election results cannot be altered. The actual controversy has ended and the only remedy that the court would enter would be ineffectual."

In response, Clarkson simply states: "There is no guidance in Kansas for the effect of a recount that takes place after the election results have been certified." For her part, however, Clarkson readily admits the 2014 election results have been certified and she does not claim that her purpose in requesting a recount is to alter or overturn any election results. This is consistent with her pleadings and legal contentions found in the pretrial order which did not suggest that she seeks a recount to alter or overturn any election results.

From our review, it is apparent that whether or not a recount is ordered in this case, there is no actual controversy between the parties with regard to whether any of the 2014 general election results are final. Quite simply, the results of any recount would not affect the outcome of the election. As a consequence, any judgment rendered by our court regarding the election recount would be moot—ineffectual with regard to affecting the outcome of the 2014 election and have no impact on the parties' rights in that election.

Is there another purpose for our court to consider this appeal? From the pleadings it is apparent that Clarkson has sought to obtain RTAL in order to conduct a statistical

11

analysis for purposes of preparing an academic paper. Similarly, although her legal justification morphed from being grounded in KORA to being based on Kansas election laws, it is also apparent that Clarkson still sought access to RTAL in order to accomplish this academic pursuit.

In the pretrial order, for example, Clarkson contended that she "seeks an order from the Court requiring [Lehman] *to turn over RTAL tapes* in question[] so that an appropriate recount can be accomplished." (Emphasis added.) During the hearing on the motion for summary judgment, however, Clarkson's position was muddled. Clarkson's counsel argued:

> "The issue is is she entitled to RTAL[?].
>> "Well, she is not entitled to it in terms of putting them in the trunk of her car and taking them home and looking at them. But certainly if you read the statute the statute says she can direct the way—the methodology of the recount. She's entitled to do that."

The district court clarified, "So you're not asking that she get these [RTALs]? That's not what the request is when you are asking for that? You are not asking that she personally be provided this information?" Clarkson's counsel answered, "We're not entitled to that."

Later, however, Clarkson's counsel argued:

> "[A] recount, is an open meeting under the statute and she has a right to be in right there on the front row. The county commissioners or the board will direct the election commissioner to put together a special election board that will go through and look at the RTALs.
>> "Now, here's what we are now focused on in this case because my client believes that the RTALs are not the same as what is being reported. *That's why* [*Clarkson*] *wants to look at the RTALs.* That's why we assume they're fighting so hard to have us [not] look at the RTALs. *We want to see them.* We have a right to see them in a recount.

"That's the purpose of this lawsuit, Your Honor." (Emphases added.)

Lehman's counsel responded:

"This notion [that Clarkson] want[s] to do a recount so that [Clarkson] can sit there and look over their shoulder and see what there is as well. They might be open to an open meetings recount by a special election board, but that does not mean individuals are allowed to go ahead and look over [the] shoulder of the election board to see the accuracy of what they are doing. There is a space they have to give because they're not allowed to do that. They are not allowed. They can be there, but they don't get to participate in the process, Your Honor.

"So, I think by that statement that counsel put in there we really have gotten into the essence of what they are wanting. They are conceding they can't get our RTALs through the [KORA] so they are trying an end around. We want a recount and they will be there and Miss Clarkson or anybody else in this courtroom and understand her credentials mean nothing in this regard when we're talking about open meetings, open courtroom. Anybody can go and look. They can't stand there and look over the special election board's shoulders and see what the results are. That's not the case."

In ruling on the summary judgment motion the district judge sided with Lehman on this point: "I also agree . . . [*Clarkson*] *is not entitled to participate in the recount*. . . . I don't think that's really even an issue at this point." (Emphasis added.) The district court's ruling was memorialized in its order partially granting summary judgment: "Under K.S.A. 25-3107(b) only a special election board appointed by the county election officer may conduct a recount of the ballots. As such, [*Clarkson*] *is not legally entitled to participate in the recount process.* [Lehman's] Motion for Summary Judgment is granted on this issue." (Emphasis added.)

Importantly, in her supplemental briefing, Clarkson acknowledges this argument: "The district court based its decision on the fact that it believes [Clarkson] was seeking disclosure of the RTALs and she would not be entitled to participate in the recount. *This*

13

*point was conceded by* [*Clarkson*] *at the hearing on summary judgment.* [Clarkson] acknowledged that she might not be appointed to actively participate in the recount." (Emphasis added.) According to Clarkson, this is because under Kansas Election Standards promulgated by the Kansas Secretary of State and the Kansas County Clerks and Election Officials Association, "only members of the special recount board or the country election officer or office staff may handle ballots or participate in conducting the recount."

So, on appeal, we are presented with a case where regardless if the district court was right or wrong in denying Clarkson an election recount, there is no real controversy regarding the validity of the election results. Moreover, the parties agree that even if a recount was appropriate, and RTAL was reviewed by a special election board, Clarkson *would not* be entitled to participate in the recount and have access to RTAL in order to conduct a statistical analysis to verify the accuracy of voting machines used at her polling site. In short, at this stage of the litigation, there does not appear to be an actual controversy before us that requires a judicial resolution that will be operative under the circumstances of this case. See *Stano*, 52 Kan. App. 2d at 682-83. This appeal is moot.

Moreover, a careful reading of Clarkson's supplemental brief shows that she does not argue that her appeal is not moot. Rather, Clarkson claims that two exceptions to the mootness doctrine—the vital rights exception and public interest exception—apply to this case, and require our court to consider the appeal despite the fact it is moot.

We agree with Clarkson that there are two exceptions to the mootness doctrine. As our court recently described them:

"First, where a judgment is not enforceable only because of lapse of time or other
changed circumstances and where dismissal of an issue will adversely affect rights vital
to one of the parties, a court may address the issue. . . . Second, where an issue, although

14

moot, is capable of repetition and raises concerns of public importance, a court may address the issue. [Citations omitted.]" *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120 (2007).

With regard to the vital rights exception, Clarkson asserts she has a statutory right to a recount under K.S.A. 2017 Supp. 25-3107. While that may be true, the gravamen of Clarkson's cause of action—whether couched as a KORA claim or an election recount claim—was to obtain access to RTAL in order to analyze whether the voting machines were properly recording ballots. As conceded by Clarkson in her supplemental briefing, however, she now acknowledges that the recount process she sought would not afford her the opportunity to conduct such an analysis.

Moreover, the district court's partial summary judgment order did not deny Clarkson the right to a recount. Rather, the district court ruled that while a special election board could conduct a recount, Clarkson was "not legally entitled *to participate* in the recount process." (Emphasis added.) And in its final journal entry of judgment, the district court adopted its prior findings, ruling that Clarkson was "not entitled to a recount *in the manner she seeks*." (Emphasis added.)

Although Clarkson's academic curiosity about the accuracy of electronic voting machines may be a worthwhile inquiry, she has not identified a specific legal right related to recounts—the ultimate ground on which she premised her action—that has been impaired or thwarted by the district court's judgment, particularly with respect to the 2014 voting and in light of her concessions.

Clarkson also asserts that the public interest exception is applicable to this appeal. She argues our court "should retain Clarkson's appeal and issue an opinion on the use of RTALs in recounts. It is undoubtedly of public importance that the counties in this state know whether RTALs are valid to use as the basis for a recount or not."

15

This second exception to the general rule relating to mootness is recognized when the case involves a question of public interest even though the case has become moot as to the present parties. In the context of this exception: "Public importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct. [Citation omitted.]" *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015); *Hilton*, 295 Kan. at 851.

As a general rule, Kansas appellate courts do not render advisory opinions. Clarkson's claim that it is of public importance for Kansas counties to know whether RTAL may be used in election recounts is an expansive permutation of her discrete cause of action. Clarkson's lawsuit and the district court's judgment is quite narrow in scope and effect. The district court's judgment is limited to the unique facts of this case and we discern no public importance or purpose in broadly espousing generalized legal authority on the use of RTAL in statewide election recounts. Moreover, as described in the factual and procedural section of this opinion, the bench trial did not involve presentation of evidence on the issue of the use of RTAL in Sedgwick County, other Kansas counties, or nationally. The absence of a fully developed factual record in this regard is another reason to resist any temptation to render an advisory opinion.

We hold that Clarkson's appeal is moot and no exceptions warrant our review of the district court's judgment. Accordingly, the appeal is dismissed.

16