NOT DESIGNATED FOR PUBLICATION

No. 118,812

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREGORY E. BELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed May 3, 2019. Affirmed.


*Angela M. Davidson*, of Wyatt & Davidson, LLC, of Salina, for appellant, and *Gregory E. Bell*, appellant pro se.


*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.


PER CURIAM: A jury convicted Gregory E. Bell of four felonies, including voluntary manslaughter for the shooting death of Antonio Judice. Bell filed a K.S.A. 60-1507 motion alleging numerous claims of ineffective assistance of trial and appellate counsel, and the district court summarily denied relief. On appeal, we affirmed the district court's ruling in part but reversed and remanded the case to the district court for an evidentiary hearing on whether trial counsel was ineffective in failing to interview and subpoena three witnesses who could have testified in Bell's defense. Following an

1

evidentiary hearing on this issue, the district court concluded that counsel's decision not to have the witnesses testify was the result of an informed strategic decision and that there was no reasonable probability of a different verdict even if the witnesses had testified. On appeal, Bell challenges the district court's ruling and raises additional ineffective assistance of counsel claims.

FACTS

The relevant facts underlying Bell's conviction are set forth in our opinion in *State v. Bell*, No. 101,903, 2011 WL 3444200, at *1 (Kan. App. 2011) (unpublished opinion):

"In the early morning hours of February 22, 2008, Lightning Joe's, a nightclub in Wichita, had just closed and its patrons were congregating in the parking lot. [Antonio] Judice and [Maurice] Peters were in the parking lot when Bell's sisters, who were angry at Judice, confronted him. This was the second altercation within a relatively short period of time between Bell's sisters and Judice. What happened next was controverted, but the unfortunate result was that Judice was shot and killed and Peters was wounded.

"At trial, more than 30 witnesses testified to their versions of the events surrounding the shootings. Many of the events were recorded on video surveillance cameras both inside and outside the club but the video recordings and numerous still images taken from them were not included in the record on appeal. Moreover, none of the trial exhibits were added to the record.

"One consistent fact at trial was that at about the time of Judice's altercation with Bell's sisters in the parking lot, a white or silver sedan drove up near Judice. Testimony indicated that Bell was a passenger and his brother, Arthur Bryant, was the driver of the sedan. Bell and Bryant may or may not have exited the sedan, but William Banks testified, with some equivocation, that Bell shot Judice. On the other hand, another witness, Steven Espinoza, testified that Bryant shot Judice. Judice died a few hours after the shooting.

"At trial, Peters testified with some equivocation that Bell had shot him from the passenger side of the sedan. Other witnesses testified the passenger in the sedan (sometimes identified as Bell) was shooting as the sedan drove away from the scene.

2

"At the conclusion of the trial, the jury found Bell guilty of the voluntary manslaughter of Judice, attempted voluntary manslaughter, and (alternatively) aggravated battery of Peters, and criminal possession of a firearm."

The district court sentenced Bell to a controlling 274-month prison term. We affirmed Bell's convictions on direct appeal. See *Bell*, 2011 WL 3444200, at *20.

In April 2012, Bell filed a K.S.A. 60-1507 motion alleging, in relevant part, ineffective assistance of trial counsel. The district court conducted a nonevidentiary hearing and ultimately concluded that Bell was not entitled to relief. On appeal to this court, Bell argued that trial counsel was ineffective in several respects, including for failing to interview and subpoena several witnesses who could have testified in his defense. A panel of this court affirmed the district court's ruling in part but reversed and remanded the case to the district court for a determination of whether counsel's failure to present testimony from Bell's sisters, LaQuitta Bell and Rayshon Bell, and Bell's cousin, Gnett Johnson, was part of a reasonable trial strategy or constituted ineffective assistance of counsel. *Bell v. State*, No. 111,662, 2015 WL 6832758, at *4-6 (Kan. App. 2015) (unpublished opinion). Specifically, the panel reasoned:

"In their statements, each of the [women] essentially state that they witnessed the shooting; that Bell was not the shooter; that they were willing to testify on Bell's behalf; and that they spoke with trial counsel but he never asked them to testify. Certainly, there may have been a legitimate reason why trial counsel decided not to call Bell's sisters [and cousin] as witnesses. However, we are simply unable to determine this based on the record as it now exists. Thus, we are obligated to remand this matter to the district court for an evidentiary hearing in order to decide whether the failure to call these witnesses was part of a reasonable trial strategy or constituted ineffective assistance of counsel. [Citation omitted.]" 2015 WL 6832758, at *6.

In May 2017, the district court held an evidentiary hearing, where the parties presented testimony from the three women, in addition to testimony from Bell and his trial counsel, Steven Mank.

*Rayshon Bell*

Rayshon testified that on February 22, 2008, she arrived at Lightning Joe's with LaQuitta, Johnson, Bryant, and Bell. Rayshon said that everyone in the group besides Bell became involved in an altercation with Judice that started inside the club and later moved outside. According to Rayshon, Bell was not outside but was in front of her, in the doorway of the club. Rayshon claimed she heard gunshots fired from behind the group and also heard a female voice yelling, "'Maurice, quit shooting.'" Rayshon said she was close to Judice when the shots were fired and saw him fall to the ground. Rayshon claimed that she then saw Bell run out of the club and that he was on the opposite side of the parking lot from where the shots were fired. Rayshon admitted she did not see who shot Judice. Rayshon said she did not see Bell pointing a gun out of the passenger window of a white car or see Bell shoot Judice. Rayshon admitted that when she spoke to law enforcement after the shooting, she refused to provide a statement. Rayshon said that before Bell's trial, she told Mank that she had been at the scene of the shooting and that Peters, not Bell, was the shooter. Rayshon claimed she was never subpoenaed to testify and never had any further conversation with Mank or his investigators after she told him Peters was the shooter.

Contrary to Rayshon's assertion that she was never subpoenaed to testify, the State introduced into evidence a subpoena reflecting that the State personally served Rayshon on September 8, 2008. Rayshon acknowledged she was in custody in Las Vegas during Bell's trial.

*LaQuitta Bell*

LaQuitta testified to a similar version of events relating to the fight with Judice and someone firing gunshots from behind the group. LaQuitta also claimed to hear a girl say, "'Maurice, stop shooting.'" LaQuitta said she saw Peters with a gun after Judice was shot. LaQuitta also said that Bell was inside the club when the shooting occurred and that she never saw Bell with a gun. LaQuitta declined to give a statement to law enforcement but later told Mank what she recalled about the shooting. Like Rayshon, LaQuitta was in a Las Vegas jail at the time of Bell's trial.

*Gnett Johnson*

Johnson's testimony was consistent with that of Rayshon and LaQuitta. Johnson claimed Bell was inside the club when the gunshots were fired from behind the group in the parking lot. Johnson never saw Bell with a weapon, shooting a gun, or fighting with Judice. Johnson heard a voice behind her say, "'Maurice, stop shooting. You shot him.'" Johnson conceded, however, that she did not see who the shooter was and did not see anyone fire a gun. Johnson refused to give a statement to law enforcement but told Mank what she had observed and that she wanted to testify at Bell's trial. According to Johnson, Mank told her that she was hostile and that he did not want her to testify. Johnson said she did not attend Bell's trial because she was working.

*Gregory Bell*

Bell testified that when the shots were fired, he was outside the bar and had followed the crowd across the parking lot as the fight between his sisters, his cousin, and Judice continued. Bell claimed the shots came from the other side of the parking lot. Bell said he saw Peters shoot into the crowd and heard Peters' sister yell, "'Maurice, quit shooting.'" Bell denied possessing a gun or shooting Judice.

5

Bell claimed he told Mank that he wanted his sisters and cousin to testify at trial and was under the impression that their testimony was going to be part of his defense. Bell testified that his sisters and cousin "definitely" would have testified if Mank had asked them to. Bell said he also told Mank about additional witnesses and other evidence that would corroborate their version of events, but he believed Mank failed to explore or use any of this evidence at trial. Bell said he was baffled that Mank relied on Espinoza—who testified that Bryant shot Judice—as a defense witness because Bell specifically had told Mank that Espinoza was lying.

Bell claimed that he would have testified at trial if his sisters and cousin had testified. Bell said that without their testimony, there was no evidence to corroborate his story.

*Steven Mank*

Mank testified he had been a criminal defense attorney for 31 years and he had tried around 250 cases and handled hundreds of murder cases throughout his career. Mank did not have Bell's case file because he had given it to Bell's appellate attorney, whom Mank was unable to locate before the hearing. In lieu of the case file, Mank used trial transcripts and notes and other correspondence from his computer to refresh his memory about Bell's case and his representation of Bell.

Mank did not specifically recall meeting with Rayshon, LaQuitta, and Johnson, but his notes reflected that he met with Bell's entire family for six hours about a month before trial. Mank recalled that he was hesitant to call the three women as witnesses because they were active participants in the events leading up to the shooting and he would not have wanted to subject them to cross-examination by the prosecutor. Mank also noted that the women were related to Bell, which compromised their credibility.

6

Mank recalled trying to subpoena Johnson in the event her testimony was needed, but the subpoena was not served.

Mank testified that the ballistics evidence showed there were at least three guns fired on the night of the shooting and that there was conflicting evidence about who the shooter was. Espinoza, who testified for the State, testified that he saw a gun in Bryant's hand. In light of evidence implicating Bryant as the shooter, Mank testified that his trial strategy was to focus on Bryant. Mank recalled there was evidence that Peters shot a gun that night, but there was no specific evidence showing that Peters shot Judice. Instead, Mank believed the evidence showed that Peters was exchanging gunfire with someone in a car and that the gunfire was not directed toward Judice. Mank agreed, in hindsight, that it was possible the jury's verdict could have been different if the jury had heard testimony from Bell's sisters and cousin. Mank testified, however, that he had to make a judgment call and that he made decisions in Bell's case based on his experience and the way the evidence came in. Mank felt that the State's witnesses were helpful to Bell and believed that the evidence was overall favorable to the defense.

After hearing the above testimony and considering arguments from the parties, the district court held that Bell was not entitled to relief on his ineffective assistance of counsel claim. The court found that Mank's choice not to present testimony from Rayshon, LaQuitta, and Johnson was an informed, strategic decision and that even if they had testified, there was no reasonable probability of a different outcome. The court also declined to consider Bell's additional claims of ineffective assistance of counsel as outside the scope of the remand order. Bell timely appeals.

ANALYSIS

On appeal, Bell argues the district court erred in denying his claim that Mank was ineffective by failing to present testimony from Rayshon, LaQuitta, and Johnson. Bell

also argues Mank was ineffective in several additional respects. We address each of Bell's arguments in turn.

*Ineffective assistance relating to Rayshon, LaQuitta, and Johnson as witnesses*

Bell contends that Mank's failure to present testimony from Rayshon, LaQuitta, and Johnson constituted deficient performance and that he suffered prejudice as a result.

An appellate court exercises a mixed standard of review when reviewing an appeal from the district court's denial of a K.S.A. 60-1507 motion after a full evidentiary hearing. We review the district court's findings of fact to determine whether the findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). An appellate court reviews the district court's factual findings and legal conclusions on claims of ineffective assistance of counsel under the same standard of review. See *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of counsel, a movant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882-83, 335 P.3d 1162 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Judicial scrutiny of counsel's performance on a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). The reviewing court must strongly presume that counsel's conduct fell within the broad range of

reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "[T]he [movant] bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy." *Sola-Morales*, 300 Kan. at 888. To establish prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Although the right to make key decisions such as what plea to enter, whether to waive a jury trial, or whether to testify belong to the defendant, strategic and tactical decisions are within the exclusive province of defense counsel. *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006). "'[S]trategic decisions made by trial counsel based on a thorough investigation are virtually unchallengeable.'" *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 (2015). The decision whether to call a particular witness is a matter of trial strategy so long as counsel conducted some investigation and had enough information upon which to base that decision. *Winter v. State*, 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972); *State v. Lewis*, 33 Kan. App. 2d 634, 648, 111 P.3d 636 (2003). "Even though experienced attorneys may disagree on the best tactics or strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel." *Flynn*, 281 Kan. at 1165.

Here, the district court ultimately found that Bell did not meet the first prong of the *Strickland* test because Mank's performance was not deficient. In reaching this conclusion, the district court found that Mank's decision not to call the three witnesses at issue was a legitimate trial strategy:

"Under the first prong of the *Strickland* test, the testimony from the remand hearing definitively shows that Mank did not provide objectively unreasonable representation. The law allows for him to dictate what witnesses are called, provided he

9

makes informed strategic decisions. Here, the evidence presented at the remand hearing definitively shows that Mank made an informed strategic decision not to call the three women as witnesses. All witnesses at the remand hearing agreed that Mank was informed about the proposed testimony of the three women, and movant testified that he and Mank had discussed their proposed testimony in the context of possible defenses. Gnett even testified that Mank told her that she was hostile and would not be called as a witness. The decision not to call the three female witnesses was simply one within Mank's purview as trial counsel, drawing upon his experience and the evidence presented. Movant may not now second guess Mank's informed strategic decision in hindsight and attempt to undermine Mank's choice to employ the most basic and valid defense that a defense attorney can employ—capitalizing on perceived weaknesses and inconsistencies in the State's evidence to create reasonable doubt.

"Also, a review of the evidence at the remand hearing shows that Mank had plenty of reason to be concerned about the testimony from the three female witnesses. The evidence at trial established that Maurice was shooting a gun that night. But at the remand hearing, the three female witnesses testified that they did not see the shooting occur. They merely heard someone yelling after the fact. And each witness claimed that movant was not outside when the shooting occurred. Yet, the video evidence at trial showed that movant was involved in the altercation outside, and movant testified at the remand hearing that he was outside in the crowd during the fight before the shooting. Also, despite being certain that Maurice was the shooter and that movant was inside the building, none of the three female witnesses provided the police with such information; instead, they allowed movant to stand trial for crimes that he could not possibly have committed under their version of events. The three female witnesses lacked credibility and would have been exposed by the prosecutor, just as Mank feared. If they had taken the stand and the jury perceived them to be liars, it would have undermined the entire case by removing any chance of acquittal or a lesser verdict. Mank was authorized and justified in making the judgment call regarding the three female witnesses."

We find the district court's conclusion that Mank's decision not to call the three witnesses was a legitimate trial strategy is supported by substantial competent evidence. At the evidentiary hearing, Rayshon, LaQuitta, and Johnson each testified that they were involved in an altercation with Judice before the shooting. All three women refused to

10

speak with law enforcement thereafter. Testimony from the women would have been subject to considerable scrutiny given their involvement in the underlying altercation and their refusal to speak with law enforcement.

Bell suggests that there would have been no risk to presenting the women's testimony, claiming he would have been no worse off than he was by its omission. But this argument ignores the fact that the version of events presented by the three women was contrary to other evidence presented at trial and, even more significantly, contrary to Bell's own testimony at the evidentiary hearing. The women each testified that Bell was inside the club during the altercation when shots were fired from behind them by an unknown shooter. Although the video from the club is not included in the record on appeal, the court's November 6, 2017 journal entry on remand reflects that surveillance from that video placed Bell in the parking lot at the time of the shooting. And Bell's own testimony at the evidentiary hearing placed him in the parking lot behind the fight when the shooting occurred. Mank testified to his belief that the State's evidence had weaknesses and inconsistencies and that his strategy was to highlight those weaknesses in order to establish reasonable doubt. Introduction of testimony from the three women that was contrary to the video evidence and Bell's own testimony could have undermined Bell's case.

Bell argues that testimony from his sisters and cousin was necessary to refute the testimony of Banks, who identified Bell as the shooter. But Mank was able to challenge Banks' credibility during cross-examination by eliciting testimony that Banks had consumed "six or seven drinks" and was "a little drunk" when he witnessed the shooting. Mank also established that Banks did not identify Bell as the shooter at the preliminary hearing and only decided to provide that information to law enforcement after he was involved in another, unrelated shooting.

11

Simply put, there is substantial competent evidence in the record to support the district court's conclusion that Mank's performance was not deficient. Mank made a reasonable strategic decision not to present testimony from Rayshon, LaQuitta, and Johnson after investigation revealed that their respective testimonies would not benefit, and in fact may harm, Bell's case. Given our finding that Mank's performance was not deficient, we need not reach Bell's arguments alleging prejudice as a result of deficient performance. The district court did not err in denying Bell's ineffective assistance of counsel claim.

*Additional ineffective assistance of counsel claims*

Bell also complains that Mank was ineffective by (1) failing to utilize alleged exculpatory video evidence; (2) failing to investigate Kevin Heard, Casey Haines, and Michael Schrader as potential defense witnesses; (3) failing to investigate 911 dispatch tapes; and (4) failing to communicate with him before trial. Bell suggests that these claims may be addressed because they relate back to his original K.S.A. 60-1507 motion.

But these issues were not included in the mandate issued to the district court on remand and are therefore not properly before us for review. See *Kelly*, 298 Kan. at 971 (issues not raised before district court cannot be raised on appeal). Generally, on remand for further proceedings after a decision by an appellate court, the district court must proceed in accordance with the mandate and is prohibited from entertaining issues beyond the scope of the mandate. *State v. Collier*, 263 Kan. 629, 636, 952 P.2d 1326 (1998); see *State v. DuMars*, 37 Kan. App. 2d 600, 603, 154 P.3d 1120 (2007) (on remand, district court is obligated to effectuate mandate and may consider only "those matters essential to the implementation of the ruling of the appellate court"). "Interpretation of an appellate court mandate and the determination of whether the district court complied with it on remand are both questions of law subject to de novo review." *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014).

This court's mandate remanded Bell's ineffective assistance of counsel claim to the district court "for an evidentiary hearing in order to decide whether the failure to call [Rayshon, LaQuitta, and Johnson] was part of a reasonable trial strategy or constituted ineffective assistance of counsel." *Bell*, 2015 WL 6832758, at *6. Based on this language, the sole purpose of the remand was for the district court to determine whether Bell's ineffective assistance of counsel claim relating to Mank's failure to offer testimony from the three women had merit. Any additional claims of ineffective assistance of counsel do not relate to the limited purpose for which the case was remanded to the district court. Like the district court, we similarly are precluded from addressing Bell's additional claims of error.

Affirmed.